IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD

PATSY ANN SMITH,

    **Plaintiff,**

v.

                                  **CIVIL ACTION NO.  1:14-29870**

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

**I.  Background**

By Standing Order, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of findings and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Eifert submitted to the court her Proposed Findings and Recommendation on November 24, 2015, in which she recommended that the court deny plaintiff's motion for summary judgment, grant defendant's motion for judgment on the pleadings, affirm the final decision of the Commissioner, and dismiss this matter from the active docket of the court.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days plus three mailing days in which to file any objections to Magistrate Judge Eifert's Proposed Findings and Recommendation.  Plaintiff timely filed objections to the magistrate judge's Proposed Findings and Recommendation.

At the outset, the court notes that judicial review in social security cases is quite limited.  The magistrate judge's review is to determine if the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that he or she applied the proper legal standards.  See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id.  Under § 636(b)(1), a district court is required to conduct a de novo review of those portions of the magistrate judge's report to which a specific objection has been made.  The court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); see also Fed. R. Civ. P. 72(b) ("The district court to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.").  The court has reviewed the record to determine whether the ALJ's decision is supported by substantial evidence, which is defined as something "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## II.  Objections and Analysis

A.  *Treatment of Dr. William Bird*

Plaintiff objects that the ALJ erred in failing to give greater weight to the opinion of her treating physician Dr. William Bird.  Plaintiff further contends that the ALJ failed to give a "good reason" for her rejection of Dr. Bird's opinion. The court disagrees.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner.  Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the

3

source's opinion.  Sections 404.1527(d)(3), (4) and (5) and
416.927(d)(3), (4), and (5) add the factors of supportability
(the more evidence, especially medical signs and laboratory
findings, in support of an opinion, the more weight will be
given), consistency (the more consistent an opinion is with the
evidence as a whole, the more weight will be given), and
specialization (more weight given to an opinion by a specialist
about issues in his/her area of specialty).

    In evaluating the opinions of treating sources, the
Commissioner generally must give more weight to the opinion of a
treating physician because the physician is often most able to
provide "a detailed, longitudinal picture" of a claimant's
alleged disability.  See 20 C.F.R. §§ 404.1527(d)(2),
416.927(d)(2).  Nevertheless, a treating physician's opinion is
afforded "controlling weight only if two conditions are met:  (1)
that it is supported by clinical and laboratory diagnostic
techniques and (2) that it is not inconsistent with other
substantial evidence."  Ward v. Chater, 924 F. Supp. 53,
55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2),
416.927(d)(2).  The opinion of a treating physician must be
weighed against the record as a whole when determining
eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2),
416.927(d)(2).

    If the ALJ determines that a treating physician's opinion
should not be afforded controlling weight, the ALJ must then
analyze and weigh all the evidence of record, taking into account
the factors listed in 20 C.F.R. §§ 404.1527 and

4

416.927(d)(2)-(6).  Significantly, a "treating physician's
opinion is not, however, necessarily conclusive as to either a
physical condition or the ultimate issue of disability."
Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

In his decision, the ALJ summarized Dr. Bird's treatment
notes and opinion and accorded his opinion little weight.
Specifically, the ALJ noted:

> As for the opinion evidence, on September 25, 2012,
> William Bird, M.D., the claimant's primary care
> physician, completed a "Physical Residual Functional
> Capacity Questionnaire" (Exhibit 14F).  Dr. Bird opined
> that the claimant can stand and/or walk for less than 2
> hours; can sit for about 2 hours; will need to shift
> positions from sitting, standing, and walking; will
> need to include periods of walking around during the
> workday; and will have to take unscheduled breaks every
> 4 hours.  She can rarely lift up to 10 pounds; can
> rarely look up or down; can occasionally hold her head
> in static position; can never climb ladders; can rarely
> stoop, crouch, and squat; and can occasionally twist
> and climb stairs.  He also opined that the claimant
> would likely miss one day of work per month.  Based on
> the objective medical records from Dr. Bird, the is
> assessment is inconsistent with his own treatment of
> the claimant.  According to the records provided by
> this physician, the claimant is doing well (Exhibit
> 18F).  Therefore, the undersigned has considered this
> opinion and has accorded it little weight.

Transcript (hereinafter "Tr. at ___") at 27.

Notwithstanding plaintiff's assertion to the contrary, there
is nothing "vague" or "unclear" about the ALJ's reasons for
giving the opinion of Dr. Bird "little weight."  Simply put, Dr.
Bird's medical records and course of treatment of plaintiff do
not support his opinions regarding plaintiff's limitations.  As
such, with respect to the factors outlined above, his opinion is

5

not sufficiently supported by or consistent with the evidence of record that it need be given controlling weight.

Accordingly, the court finds that the ALJ set forth his reasons for according little weight to the opinion of Dr. Bird and the ALJ's decision is supported by substantial evidence of record.  See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (holding that "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").  It is evident from the record that the weight accorded Dr. Bird's opinion was based on the totality of the medical evidence, as well as plaintiff's reported daily activities.  "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).  Plaintiff's objection is therefore OVERRULED.

B.   *Consideration of Mental Impairments*

Plaintiff objects that the ALJ erred in determining that she did not suffer from a severe mental impairment.  Magistrate Judge Eifert concluded that the ALJ's decision in this regard was supported by substantial evidence.  It is clear from the objections themselves that plaintiff's real contention is that,

6

in weighing the contradictory evidence regarding alleged mental impairments, the ALJ made the wrong decision – not that the decision itself was not supported by substantial evidence.  In her objections, plaintiff goes on to outline the evidence in the record that she believes demonstrates that she suffers from a severe mental impairment.  See Objections pp. 3-5.  However, the court's role upon review is to determine if the ALJ's decision is supported by substantial evidence - - not to resolve conflicts in the evidence.

In considering the evidence regarding plaintiff's mental impairments, the ALJ summarized the evidence of record and concluded as follows:

> The claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
> On October 10, 2011, the State agency referred the claimant to Kelly Robinson, M.A., for a psychological evaluation in order to evaluate the severity of the claimants mental impairments (Exhibit 10F).  The claimant reported feelings of nervousness, problems with concentration, racing thoughts, difficulty sleeping, irritability, and withdrawal from others. The claimant said that she was currently employed as a receptionist for 20 hours per week.  Mental status evaluation revealed an anxious mood, broad and reactive affect, logical and coherent thought process, fair insight, judgment and memory within normal limits, and no suicidal or homicidal ideation.  The claimant was alert and oriented to person, place, time and date. The examiner diagnosed the claimant with anxiety disorder NOS but said that she did not meet criteria for any specific anxiety disorder at that time; social

7

functioning, concentration, persistence, and pace were all within normal limits. The examiner also noted that the claimant had good use of all limbs, walked with a normal gait and posture, and attended the examination unaccompanied.

At the request of the undersigned, the claimant underwent a psychological consultative examination by Tonya McFadden, Ph.D., on April 15, 2013 (Exhibit 16F). The claimant indicated she was disabled because of carpal tunnel syndrome, cataracts, high blood pressure, obesity, and anxiety. She said that her psychiatrist thought she might be depressed and that she had taken Celexa but it "zoned her out" so she stopped taking that prescription. The claimant said that she did not think that she had ever been totally disabled from work. She reported that she had reinjured her hand while pulling on an individual with whom she was "sitting." The claimant indicated that anxiety was related to her financial situation. She reported feeling anxious, irritable, and a little hopeless. She said that she has difficulty thinking and with memory, and that she cannot multi-task. She denied feelings of hopelessness or worthlessness, suicidal or homicidal ideations, and panic attacks. The claimant stated that she mainly feels happy, and denied excessive worry. Mental status evaluation revealed her mood as mildly anxious; affect appeared broad; insight and judgment appeared fair; concentration appeared mildly deficient; while everything else was within normal limits. Dr. McFadden diagnosed anxiety disorder NOS because the claimant exhibited an anxious mood and reported some symptoms of anxiety.

The claimant received mental health counseling at Southern Highlands from March 2012 to May 2013 (Exhibit 13F; Exhibit 19F). Tina Bonich, M.A., diagnosed general anxiety disorder and opined that the claimant's socialization was not limited due to symptoms, and there was no impairment in daily functioning (Exhibit 13F at 4). During a follow-up visit with Ted Webb, PA-C, the claimant was diagnosed with depressive disorder (Exhibit 13F at 9). During her visits, the claimant [had] Global Assessments of Functioning (GAF) scores 60 in March 2012, a GAF 50 in April and May, 2012 and GAFs

8

of 55 and 60 after that.* Even with the GAF score of
50, her mood and affect were described by Ted Webb/PAC
as upbeat, her memory was intact, she had normal
attention and sociability, and she was alert and
oriented times 3. Her primary care physician has
described Xanax and she said that it was working well
with no side effects (Exhibit 13F at 2). After trying
several different medications, the claimant was
prescribed Ambien, which seemed to resolve her sleep
problems (Exhibit 19F at 4, 6, 8). During the final
evaluation in May 2013, two months prior to the
claimant's disability hearing, she reported progress
with treatment, indicating less anxiety since her last
visit. She said that she was functioning better on her
current medications. Moreover, she indicated that she
was getting out and doing more things around her home
and in the community than she used to do (Exhibit 19 at
11). She stated that she did not need counseling at
that time.

In making this finding regarding the claimant's mental
impairments, the undersigned has considered the four
broad functional areas set out in the disability
regulations for evaluating mental disorders and in
section 12.00C of the Listing of Impairments (20 CFR,
Part 404, Subpart P, Appendix 1). These four broad
functional areas are known as the "paragraph B"
criteria.

The first functional area is activities of daily
living. In this area, the claimant has mild
limitation. The next functional area is social
functioning. In this area, the claimant has mild
limitation. The third functional area is
concentration, persistence or pace. In this area, the
claimant has mild limitation. The fourth functional
area is episodes of decompensation. In this area, the
claimant has experienced no episodes of decompensation
that have been of extended duration. These functional

---

* To the extent plaintiff contends the ALJ erred in not giving
her GAF scores greater weight, it is worth noting that "GAF scores
may be of limited value in determining whether a claimant is
disabled" and that they have "no direct medical or legal
correlation to the severity requirements of social security
regulations." Vest v. Colvin, No. 5:13CV00067, 2014 WL 4656207,
*22 (W.D. Va. Sept. 16, 2014).

areas are supported by the treatment records and opinions summarized above and will be discussed further below.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

* * *

The claimant testified that she has worked sporadically throughout the year, and last worked in June 2013.  She does not think that she could perform work on a full-time basis for 40 hours a week because she gets anxious.  The claimant also reported that she gets forgetful and confused.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms: however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision and discussed further below.

At the request of the State agency, the claimant underwent a consultative examination by Gary Craft, M.D. on September 22, 2011 (Exhibit 1F). . . .  She indicated that she has cataracts involving each eye,

10

hypertension, elevated cholesterol, obesity, anxiety-depressive disorder, and borderline diabetes.  The claimant reported that she was still working as a certified nursing assistant. . . .   Dr. Craft said that the claimant was well oriented, related well to other people, and gross mental status was intact.  She had a normal affect, memory, thought content, and the musculoskeletal system [w]as fair. . . .   Overall, the examination showed no major functional limitations.  These findings are not indicative of the severe physical limitations alleged by the claimant.

The claimant's primary care physician, William Bird, M.D., saw the claimant in February and May 2013 (Exhibit 18F).  The claimant reported that overall she was doing well and was fine concerning anxiety and mood (Exhibit 18F at 2, 10).  There were no significant findings on physical examination, no recommended treatment plans, and there was no referral to a specialist.

The objective medical evidence and the claimant's treatment history do not fully support her allegations of the severity of her functional limitations.  The undersigned finds that the claimant's allegations as a whole are not credible.  The claimant has been a less than reliable historian about fundamental facts such as the severity of her alleged impairments and her physical and mental capabilities.  At the hearing, the claimant alleged that anxiety was a significant problem for her and would interfere with her ability to work on a sustained basis.  However, during her most recent mental health evaluation, she indicated that her anxiety had decreased, she was functioning better, and she did not need counseling (Exhibit 16F). . . .   Little in the documentary evidence suggests that the severity, frequency, or duration of physical discomfort or emotional dysfunction are as persistent, intrusive, or progressive as the claimant has alleged.

* * *

At various points in the record (in forms completed in connection with the application and appeal, in examinations or evaluations with medical professionals, or in the claimant's testimony), the claimant has reported working 20 hours a week, tending to her

11

personal care needs, caring for pets, general household
cleaning, preparing meals, driving, shopping, watching
television, reading, listening to the radio, managing
finances, watering household plants, and regularly
attending church (Exhibits 5E; Exhibit 12E; Exhibit 10F
at 4; Exhibit 16F).  By her own account, and according
[to] the consultative examiner and (Exhibit 16F), the
claimant engaged well with others.  Attention,
concentration, persistence, and pace have all been
noted as within normal limits (Exhibit 10F).  She is
capable of managing her own benefits (Exhibit 10F;
Exhibit 16F).  Given the complaints of disabling
symptoms and limitations, such activities are not
limited to the extent one would expect.

* * *

In connection with her consultative examination and
report which was summarized hereinabove, Dr. McFadden,
completed a "Medical Source Statement of Ability to do
Work-Related Activities (Mental)," and opined that the
claimant had no limitations in understanding,
remembering and carrying out simple instructions but
was moderately restricted in the ability to understand,
remember, and carry out complex instructions, and the
ability to make judgments on complex decisions.  She
opined that the claimant had mild limitations in
interacting appropriately with the public but was
moderately restricted in the ability to interact with
supervisors and coworkers, and to respond appropriately
to work situations and changes (Exhibit 16F).  The
undersigned gives Dr. McFadden's opinion that the
claimant has not [sic] limitations in performing simple
tasks significant weight.  However, the undersigned
gives no weight to the opinion that the claimant has
moderate restrictions in the ability to interact with
supervisors and coworkers and respond appropriately to
work situations and changes, since it is inconsistent
with other evidence in the record and is inconsistent
with Dr. McFadden's own findings on examination.
According to the report, the claimant stated that she
mainly feels happy and denied excessive worry.
Therefore, the undersigned gives this part of the
opinion little weight.

* * *

12

Debra Lilly, Ph.D., a State agency psychological
examiner, thoroughly examined the claimant's medical
evidence of record.  Dr. Lilly opined that the
claimant's mental impairment was nonsevere (Exhibit
8F).  Rosemary Smith, Psy.D., a State agency
psychological examiner, also thoroughly examined the
claimant's medical evidence of record.  Her opinion was
substantially consistent with that of Dr. Lilly
(Exhibit 12F).

Although State agency consultants are non-examining
medical sources, and therefore their opinions do not as
a general matter deserve as much weight as those of
examining or treating physicians, the opinions do
deserve some weight as these doctors have a high level
of understanding of the Social Security disability
program and enjoyed a review of all the available
evidence in the record when forming their opinions.
These opinions are generally consistent with the
treatment notes and objective findings that have
generally found the claimant's limitations to be normal
or mild.  The undersigned therefore gives these
assessments considerable weight.

Tr. at 22-28.  As the foregoing demonstrates, the ALJ thoroughly

reviewed the evidence of plaintiff's mental impairments and,

based upon the record as a whole, found that the impairments were

not as severe as alleged by plaintiff.  Furthermore, it is clear

that when the ALJ decided to give certain opinions little or no

weight that she gave good reasons for the decision to do so and

that those reasons were grounded in the guidance found in the

social security regulations.  This is not a situation where the

ALJ simply forgot certain evidence or failed to give reasons for

her treatment of that evidence.  Rather, in light of

contradictory opinions and/or evidence regarding the alleged

severity of plaintiff's mental functioning, the ALJ considered

<u>all</u> the evidence of record and concluded that plaintiff was not disabled.

The role of this court on review is to determine whether substantial evidence supports the ALJ's decision.  42 U.S.C. § 405(g); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Upon review of the record, the court finds ample evidence to conclude the ALJ considered all of plaintiff's impairments and based her decision on those which she felt imposed significant limitations.  Accordingly, plaintiff's objection is OVERRULED.

### III. Conclusion

For the reasons set forth above and in Magistrate Judge Eifert's PF&R, , the court OVERRULES plaintiff's objections to the Magistrate Judge's Findings and Recommendation.  Accordingly, the court adopts her Findings and Recommendation and DENIES plaintiff's motion for summary judgment, GRANTS defendant's motion for judgment on the pleadings, AFFIRMS the final decision of the Commissioner, and DISMISSES this case from the active docket of the court.  A separate Judgment Order of even date herewith will be entered.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.  The Clerk is further directed to remove this action from the active docket of this court.

**IT IS SO ORDERED** this 29th day of March, 2016.

ENTER:  David A. Faber

David A. Faber
Senior United States District Judge

14